**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Frazer Charles MACINNES,
et al., Defendants,**

and

**U.S. Financial, L.P., Respondent—
Appellant.**

No. 04–50494.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 17, 2006.

Filed Jan. 26, 2007.

Hawkins, Circuit Judge, filed concurring opinion.

Leah R. Bussell, Esq., AUSA, USSD–Office of the U.S. Attorney, San Diego, CA, for Plaintiff–Appellee.

Christopher Seaman, San Diego, CA, for Defendant.

Before: KENNEDY *, HALL, and HAWKINS Circuit Judges.

---

* The Honorable Cornelia G. Kennedy, Senior Judge for the Sixth Circuit Court of Appeals, sitting by designation.

## MEMORANDUM **

U.S. Financial, L.P. appeals the district court's order setting aside a state law foreclosure sale. The district court held that (1) Washington Mutual Bank, which initiated the foreclosure sale, had no interest in the property at the time of the sale because its interest had been terminated by earlier civil and criminal forfeiture proceedings and, in addition, (2) the foreclosure sale violated 21 U.S.C. § 853(k), which bars actions against the United States to determine third party interests in property subject to criminal forfeiture. On appeal, U.S. Financial contends (1) that the United States had not provided constitutionally adequate notice to Washington Mutual so that the civil forfeiture judgment is void and (2) that the foreclosure sale did not constitute "an action at law or equity against the United States" and that there was no violation of 21 U.S.C. § 853(k). For the reasons that follow, we affirm the district court's Order Granting the Government's Motion to Set Aside Foreclosure Sale, Enforce Forfeiture Orders, and Restrain Further Action.

### BACKGROUND

Frazer Charles and Maureen MacInnes (the "MacInneses"), who are not parties to this action, were indicted for, and eventually pleaded guilty to, marijuana-related charges. Dist. Ct. Op. at 2, ER at 79. During their criminal proceedings, the United States (the "Government") initiated two proceedings against a parcel of the MacInneses' real property (the "Property"). Dist. Ct. Op. at 2–3, ER at 79–80. It first filed a civil forfeiture proceeding under 21 U.S.C. § 881(a)(7) (the "Civil Proceeding") against the Property on September 26, 2002.[1] On the same day, the Government filed a Notice of Lis Pendens respecting the Civil Proceeding with the San Diego County Recorder's Office and mailed notice of the proceeding to the holder of the first deed of trust on the Property, Washington Mutual Bank ("Washington Mutual"), care of its customer service department, by certified mail. ER at 37. The Government also published notice of the Civil Proceeding in the *San Diego Commerce* on November 8, 15, and 22 of 2002. ER at 6. Notice was also posted on the door of the Property and served on the MacInneses. Washington Mutual did not appear in the Civil Proceeding. A final order of civil forfeiture was entered on February 26, 2003.

The Government initiated the second proceeding, a criminal forfeiture proceeding under 21 U.S.C. § 853 (the "Criminal Proceeding"), against the property on February 24, 2003, by filing a Preliminary Order of Forfeiture with the United States District Court for the Southern District of California. Dist. Ct. Op. at 2, ER at 79. Notice of the Criminal Proceeding was mailed to Washington Mutual on March 5, 2003, care of their legal department, by certified mail. ER at 61. Washington Mutual did not file a petition with the district court in that proceeding within the thirty days prescribed by 21 U.S.C. § 853(n). Dist. Ct. Op. at 3, ER at 80. On May 16, 2003, however, the Government submitted an Amended Order of Criminal Forfeiture (the "Amended Order") which forfeited "all right[,] title and interest of Frazer Charles MacInnes and any and all third parties in the [Property] ... except the interest[ ] of Washington Mutual Bank as to the [Property]...." ER at 10. The order explained that, "[t]he

---

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. An appendix to this opinion provides a list of the various events and dates.

U.S. Attorney's Office received Washington Mutual Bank's claim, based on a promissory note secured by a trust deed, to the [Property]. The United States recognizes the validity and priority of the interest of Washington Mutual Bank in [the Property]." *Id.*

Subsequently, in what the court below characterized as an apparent "error," Washington Mutual caused foreclosure proceedings to initiate against the Property. Dist. Ct. Op. at 3, ER at 80. On May 30, 2003, Washington Mutual recorded a Notice of Default and Election to Sell under Washington Mutual's trust deed with the San Diego County Recorder's Office and on September 4, 2003, recorded a Notice of Trustee's Sale for September 25, 2003. Notice of the sale was sent to the United States Marshal's Service. Notice was not sent to the United States Attorney for the district nor the Attorney General of the United States. Dist. Ct. Op. at 3, ER at 80. At a public auction foreclosure sale held on September 25, 2003, U.S. Financial purchased the property for $120,000. The appraised value of the property was $260,000. The Government has indicated that the payoff amount on Washington Mutual's loan, secured by the deed of trust, was approximately $61,000 at that time. That amount was paid to Washington Mutual.

On September 30, 2003, the Government filed a motion to set aside the forfeiture sale, which U.S. Financial opposed. The district court granted the motion on August 23, 2004 and recognized that title to the Property was in the United States based on both the civil and the criminal forfeiture in an order entered on September 2, 2004. U.S. Financial filed this appeal on September 22, 2004.

# DISCUSSION

## I. Timeliness of Appeal

The Government first contends that U.S. Financial's appeal is not timely because it was not appealed within 10 days as required by Fed. R.App. P. 4(b), which sets the time limit for appealing a ruling in a criminal case. We find that this argument is without merit.

In *United States v. Alcaraz–Garcia,* we found that a third party petition to amend an order of criminal forfeiture was civil, and not criminal, in nature. 79 F.3d 769, 772 n. 4 (9th Cir.1996). Subsequently, in *United States v. Soueiti,* 154 F.3d 1018, 1020 (9th Cir.1998), we explained that *Alcaraz–Garcia* was an adoption of *United States v. Douglas,* 55 F.3d 584 (11th Cir. 1995), and its reasoning.

The Eleventh Circuit in *Douglas* reached its conclusion for several reasons. First, it noted that 21 U.S.C. § 853(k)(2) prohibits third parties from "commencing an action at law or equity against the United States concerning the validity of [their] alleged interest in the property." The hardship caused by this prohibition was ameliorated by § 853(n) and that section was therefore "a substitute for separate *civil* litigation against the government." *Douglas,* 55 F.3d at 586 (emphasis in original). Second, *Douglas* noted that the Government can choose whether to pursue civil or criminal forfeiture proceedings and thus "choose the manner in which third parties must defend their property interests." *Douglas,* 55 F.3d at 587. The court concluded that a disparity between civil and criminal forfeiture would provide the Government with an incentive to channel non-meritorious forfeiture attempts into criminal proceedings and such a result was both undesirable and irrational. Third, the court analogized to other hybrid proceedings, such as those brought under Fed.R.Crim.P. 41(e), and found that, "[w]hen brought by persons not under criminal indictment, proceedings that are usually ancillary to criminal prosecutions

have been held to be civil actions." *Douglas*, 55 F.3d at 587. Since claimants under § 853(n) are "by definition" not under criminal indictment, the court concluded that all such proceedings were civil.

Our opinion in *Soueiti*, in its discussion of *Douglas*, emphasized the nature of the petitioner, rather than the statute governing the proceeding. "The criminal's creditor, not the criminal, sought recovery of the property. As to the creditor, the proceeding was not criminal, because the creditor was not charged with the crime." *Soueiti*, 154 F.3d at 1020. Because "Soueiti was indicted, pleaded guilty, and was sentenced," we found that his was not a civil action and he was thus not entitled to attorneys' fees under the Equal Access to Justice Act.

The Government attempts to distinguish *Alcaraz–Garcia*, and thus *Douglas*, by claiming that this appeal is somehow different from most proceedings under § 853(n). It claims that this case is an appeal of an order under § 853(g), which allows the United States to seize property after receiving an order of forfeiture from the district court, and therefore the rules pertaining to criminal appeals apply. However, the reasoning in *Douglas* is still applicable: U.S. Financial is prohibited from separate civil litigation due to the Government's choice of remedy. Therefore, this appeal by a non-defendant is a civil action and governed by the 60–day time limit set forth in Fed. R.App. P. 4(a). Thus, this appeal is timely.

## II. The Criminal Forfeiture Proceeding

U.S. Financial argues that, since § 853(k) only applies to actions that "concern[ ] the validity of [one's] interest in the property," it does not apply to this action because Washington Mutual's interest was already determined to be valid by the Amended Order's express recognition of that interest. That is, once the interest is determined to exist, argues U.S. Financial, it should be free to litigate to determine the extent of that interest.

In the alternative, U.S. Financial argues that the foreclosure sale was not "an action ... against the United States...." While U.S. Financial concedes that the Government took title to the Property by virtue of the Criminal Proceeding, it argues that the Government did so subject to Washington Mutual's security interest and is thus subject to the terms of the deed of trust. U.S. Financial Br. at 26. Those terms, it argues, include the contractual right to foreclose and sell the property if the payments on the note are not made and that that right is severable and survives the forfeiture.[2]

### a. Section 853(k) applies after the order of forfeiture is entered.

We hold that the § 853 prohibition on alternative litigation extends beyond a district court's recognition that a valid property interest exists. First, subsection (g) provides a district court with broad powers "*[f]ollowing* entry of an order declaring the property forfeited ... to protect the interest of the United States in

---

**2.** The Government argues at length in its brief that the federal forfeiture laws preempt state law by virtue of the Supremacy Clause of the Constitution. This argument is certainly valid. However, it appears to misconstrue U.S. Financial's position: U.S. Financial does not argue that the Government's rights to the Property, conferred by 21 U.S.C. § 853, are subsidiary to Washington Mutual's state law

rights. That is, it does not argue that state law preempts federal law. Rather, it argues that a foreclosure sale is not "an action ... against the United States," 21 U.S.C. § 853(k), and thus the foreclosure sale is not prohibited by federal law at all. In doing so, it implicitly accepts (as it must) the Government's argument that, in this case, 21 U.S.C. § 853(k) preempts state property law.

the property ordered forfeited...." Second, subsection (h) directs the attorney general to *dispose* of the property, "making due provision for the rights of any innocent persons." Third, subsection (k) itself prohibits a party from "commenc[ing] an action ... *subsequent to the filing of an indictment or information*" (emphasis added). That is, reading subsection (k) in context with the other subsections convinces us that the pendency of the district court's exclusive jurisdiction over the property continues at least until the property is sold or otherwise disposed of.

In addition, in keeping with subsection (o)'s directive to construe section 853 "liberally ... to effectuate its remedial purposes," we believe that "the validity of [the innocent person's] alleged interest in the property" is broader than U.S. Financial contends. That is, the "validity" of the interest is more than mere recognition of a right in the Property. Rather, it is the entire bundle of rights that the party holds. Even while the Amended Order recognized that a right was valid, the extent of its validity can only be litigated in front of the district court pursuant to § 853(n). Therefore, the *only* right a party with an interest in the Property prior to forfeiture retains "subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture," 21 U.S.C. § 853(k)(2), is the right to petition the district court pursuant to section 853(n).[3]

**b. A foreclosure sale is "an action ... against the United States."**

■ U.S. Financial argues that the right to foreclose was not terminated by the Criminal Proceeding, but that the Government stepped into the place of the previous owners, the MacInneses. As the new owner, it argues that the Government was required to make payments on the loan secured by the deed of trust. When it did not make payments, Washington Mutual was entitled to exercise its state law rights under the deed of trust; it was entitled to foreclose. We disagree. The § 853(k) prohibition on additional actions includes the foreclosure sale in this case.

In essence, U.S. Financial argues that a state foreclosure sale is not "an action ... against the United States...." The exercise, however, of Washington Mutual's state law right to foreclose violates § 853(k). While in many ways, the Government steps into the shoes of the previous owner when it takes title to real property by forfeiture under § 853, it does not do so entirely. Rather, § 853(k) extinguishes the right of lien holders and other interested parties to enforce their rights against the Government through separate civil litigation. In its place it establishes an alternative remedy, § 853(n), the administrative remedies in 28 C.F.R. § 9.1 *et seq.*, and the benefit of having that most desirable of creditors, the federal government of the United States.

In *United States v. Phillips* the Fourth Circuit determined that a foreclosure sale was "an action at law or equity against the United States" in contravention of § 853(k). 185 F.3d 183 (4th Cir.1999). "Although the foreclosure action was technically brought against [the defendant] and not the United States, [§ 853](c) provides

---

**3.** For the sake of thoroughness, we also note that subsection (i) provides the attorney general with the authority to "grant petitions for mitigation or remission of forfeiture," 21 U.S.C. § 853(i)(1) and provide other relief. The attorney general has promulgated regula-

tions to this effect in 28 C.F.R. § 9.1 *et seq.* Therefore, an aggrieved party has an alternative avenue to seek redress, although these regulations do not necessarily establish additional rights. *See* 28 C.F.R. § 9.1(c).

that title to the properties at issue had already vested in the United States at the time of the foreclosure sale. Because the Government held title to the properties at the time of the sale, the foreclosure action constituted 'an action at law or equity against the United States' and was statutorily barred under § 853(k)." *Phillips*, 185 F.3d at 188. The *Phillips* court also noted that the foreclosing lien holder's interest in the property was not harmed by the prohibition on forfeiture. The Government and the lien holder had entered into a stipulation recognizing the lien holder's interest in the property. "The procedural protections provided under § 853(n) afforded [the lien holder] sufficient means to guard its lien interest in the properties." *Id.*

U.S. Financial cites *United States v. Metmor Financial, Inc.*, 819 F.2d 446, 451 (4th Cir.1987), for the proposition that the Government is bound by state law contract rights created before the forfeiture. That decision is inapposite. In *Metmor* the Fourth Circuit was confronted with an appeal of a § 881 forfeiture proceeding and the question was whether the lien holder was entitled to interest accrued subsequent to forfeiture. The court found that it was. *Metmor*, 819 F.2d at 451. While in the context of civil and not criminal forfeiture proceedings, that decision comports with this conclusion for two reasons. First, the lienholder pursued its remedy through a § 853(n) proceeding and not via a separate action. Second, § 853 does not explicitly proscribe the accrual of interest, but does proscribe distinct actions against the Government.

Therefore, we join the Fourth Circuit and conclude that a foreclosure sale of forfeited property is "an action ... against the United States...."

## III. The Civil Forfeiture Proceeding

The district court also found that the property was forfeited by the Civil Proceeding. U.S. Financial contends that mailing the notice to Washington Mutual's customer service department, rather than its designated agent for service, was a violation of Washington Mutual's due process rights, which requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Because we affirm the court on the above, alternative holding, we decline to address whether the Government failed to satisfy its constitutional obligation and the requirements of 19 U.S.C. § 1607(a), which "requires the Government to send written notice of forfeiture to each party who may have an interest in the seized property...." *Lopez v. United States*, 201 F.3d 478, 480 (D.C.Cir.2000). *See United States v. Vacant Land*, 15 F.3d 128, 131 (9th Cir.1993), *United States v. Giraldo*, 45 F.3d 509, 510 (1st Cir.1995).

## CONCLUSION

For the reasons set forth above, the judgment of the court below is AFFIRMED.

## APPENDIX—TIME LINE OF EVENTS

| Date | Proceeding | Event |
| --- | --- | --- |
| 9/26/2002 | Civil | Civil Proceeding filed against property; Notice of Lis Pendens filed with San Diego County Recorder's Office |
| 10/8/2002 | Criminal | MacInnes's indicted; indictment includes forfeiture proceedings |
| 10/21/2002 | Criminal | Notice of Lis Pendens reflecting criminal indictment filed with San Diego County Recorder's Office |

APPENDIX—TIME LINE OF EVENTS—Continued

| 11/5/2002 | Civil | Notice of Civil Proceeding mailed to Washington Mutual |
| 2/24/2003 | Criminal | Preliminary Order of Forfeiture in Criminal Proceeding submitted by Government and signed by district court |
| 2/26/2003 | Civil | Judgment entered in Civil Proceedings |
| 3/5/2003 | Criminal | Notice of Preliminary Order received by Washington Mutual |
| 5/16/2003 | Criminal | Amended Order of Forfeiture in Criminal Proceeding submitted by Government and signed by the district court |
| 5/30/2003 | State Foreclosure | Notice of Default and Election to Sell filed with San Diego County Recorder's Office |
| 7/8/2003 | Criminal | Amended Order of Forfeiture filed with San Diego County Recorder's Office |
| 9/4/2003 | State Foreclosure | Notice of Trustee's sale for September 25, 2003 filed with San Diego County Recorder's Office |
| 9/? ?/2003 | State Foreclosure | Notice of the State Foreclosure Sale sent to U.S. Marshall's Service |
| 9/25/2003 | State Foreclosure | Public auction sale held |
| 9/30/2003 | Criminal | Government filed Motion to Set Aside Foreclosure Sale |

HAWKINS, Circuit Judge, concurring:

I concur in the result, but for different reasons than my colleagues. Most fundamentally, the case is moot for the simple reason that we are incapable of granting the only relief U.S. Financial seeks. Before us is the Government's Motion to Set Aside Foreclosure Sale, Enforce Forfeiture Orders, and Restrain Further Action, which the district court granted. U.S. Financial, however, did not obtain a stay of this order pending appeal. The government, acting under the authority of the district court's order (which vested title to the property in the United States), has sold the property to a third-party purchaser. Even if we were to reverse the district court, we cannot unring this bell and reinstate the foreclosure sale, putting U.S. Financial back as the owner of the property. We therefore lack the ability to grant U.S. Financial any effective relief and should dismiss the appeal as moot. *Cf. In re Baker & Drake, Inc. v. Public Service Commission of Nevada*, 35 F.3d 1348, 1351 (9th Cir.1994).

Even if the case were not moot, I would approach the merits differently. The state foreclosure sale was not an action "concerning the validity" of Washington Mutual's interest in the property, *see* 21 U.S.C. § 853(k), which was acknowledged in the amended forfeiture order, but an action *as a remedy* for the default on loan terms. However, even otherwise valid state remedies such as non-judicial foreclosure must yield to the government's interest in this case pursuant to the Supremacy Clause, and only the Attorney General should be able to dispose of forfeited property. *See Yunis v. United States*, 118 F.Supp.2d 1024, 1035–36 (C.D.Cal.2000); 21 U.S.C. § 853(h).

I therefore concur in the result.